IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| BOARD OF WATER WORKS TRUSTEES OF THE CITY OF DES MOINES, IOWA,<br><br>Plaintiff,<br><br>vs.<br><br>SAC COUNTY BOARD OF SUPERVISORS AS TRUSTEES OF DRAINAGE DISTRICTS 32, 42, 65, 79, 81, 83, 86, and CALHOUN COUNTY BOARD OF SUPERVISORS and SAC COUNTY BOARD OF SUPERVISORS AS JOINT TRUSTEES OF DRAINAGE DISTRICTS 2 AND 51 and BUENA VISTA COUNTY BOARD OF SUPERVISORS and SAC COUNTY BOARD OF SUPERVISORS AS JOINT TRUSTEES OF DRAINAGE DISTRICTS 19 and 26 and DRAINAGE DISTRICTS 64 and 105.<br><br>Defendants. | Case No. 5: 15-cv-04020<br><br><br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## Preliminary Statement

On March 16, 2015, the Board of Water Works Trustees of the City of Des Moines, Iowa ("DMWW") sued Defendants alleging nuisance (public, statutory and private), trespass, negligence, taking without just compensation in violation of the United States and Iowa Constitutions, due process and equal protection violations, and violations of the Clean Water Act and Iowa Code Chapter 455B – all based on nitrates in the Raccoon River that they claim reached Des Moines from certain small drainage districts far upstream. Drainage districts are not proper parties to adversary litigation, are not subject to suit on tort claims, and only may be sued in mandamus to perform their statutorily delegated duties. Thus, drainage districts are not proper party defendants to DMWW's common law claims and may not be sued for damages.

DMWW's attempt to save these claims by alleging constitutional violations fares no better because, among other things, political subdivisions of the State of Iowa cannot allege constitutional violations by other political subdivisions.

## Statement of Facts

Because drainage districts exist only as creations of statute and Iowa's Constitution, Iowa's Code and Constitution establish the relevant facts regarding drainage districts. Iowa's Legislature concluded drainage from agricultural and other lands shall be presumed to benefit the public and established a vehicle to accomplish this public good:

> The drainage of surface waters from agricultural lands and all other lands, including state-owned lakes and wetlands, or the protection of such lands from overflow shall be presumed to be a public benefit and conducive to the public health, convenience, and welfare.
>
> The provisions of this subchapter and all other laws for the drainage and protection from overflow of agricultural or overflow lands shall be liberally construed to promote leveeing, ditching, draining and reclamation of wet, swampy, and overflow lands.

Iowa Code § 468.2(1) and (2). Iowa Code Chapter 468 and Iowa Constitution Article I, Section 18, establish drainage districts as they exist under Iowa law.

"A drainage district is an area of land, set out by legal proceedings, which is subject to assessment for drainage improvements within the area." *Fisher v. Dallas Cty.*, 369 N.W.2d 426, 428 (Iowa 1985). For a drainage district to be established, at least two land owners must petition for its creation. Iowa Code § 468.6. Drainage districts are a funding mechanism property owners establish to levy for drainage improvements. *Fisher*, 369 N.W.2d at 428-29. Neither the County Board of Supervisors, nor the drainage districts, has the power to impose a general tax to benefit a drainage district. *Id.* at 429. If a repair exceeds $50,000, a hearing is required to determine advisability and appeal is allowed. Iowa Code § 468.126(1)(c); *Chicago Cent. & Pacific R. Co. v. Calhoun Cty. Bd. of Super.*, 816 N.W.2d 367, 371-72 (Iowa 2012). Similarly,

improvements exceeding a certain threshold can be stopped through a process called a remonstrance. Iowa Code § 486.126(4)(e).

Drainage districts "have only such power as the legislature grants them . . . ." *Reed v. Muscatine-Louisa Drainage Dist. No. 13*, 263 N.W.2d 548, 551 (Iowa 1978). Those powers are extremely limited. Drainage districts do not have the power to direct landowners' use or management of their properties or to control how much rain falls from the sky. Iowa Code § 468.1 *et seq.* Much like the builder of a highway does not control what travels over that highway, drainage districts do not control what goes through drainage tiles. They simply fulfill their legislatively mandated functions as specified in Iowa Code Chapter 468. For its part, DMWW is a municipal water utility organized under Iowa Code Chapter 388, supplying water to the Des Moines metro area. Complaint at ¶ 23. DMWW seeks monetary damages to compensate it for harm allegedly caused by water it believes came through drainage infrastructure in Sac, Calhoun, and Buena Vista Counties. Because there is no legal basis for DMWW's claims, the drainage districts seek partial summary judgment dismissing Counts III through X.

## Argument

At this point in the litigation, substantial discovery has yet to occur. Although other motions may follow as discovery progresses, this litigation presents certain purely legal issues governed by well established law that, if addressed now, may save substantial time and resources for the public entities involved in this suit. Central among these is that "[t]he drainage district is not such a legal entity as is known to or recognized by law as a proper party to adversary proceedings." *Gish v. Castner-Williams & Askland Drainage Dist.*, 136 Iowa 155, 113 N.W. 757, 757 (1907). Thus, "a drainage district could not be subject to a money judgment in tort under any state of facts." *Fisher*, 369 N.W.2d at 430. Further, even where a legislatively

provided duty exists, the remedy is through mandamus. *Id.* at 429. These principles, at a minimum, bar Counts III through X.

I. Drainage Districts Are Not Subject To Suit For Money Damages And Cannot Be Sued Except Through Mandamus.

Iowa's courts repeatedly have made clear a drainage district cannot be sued for money damages. *Fisher v. Dallas County*, 369 N.W.2d 426, 429-30 (Iowa 1985); *Board of Supervisors v. District Court*, 229 N.W. 711, 712 (Iowa 1930); *Maben v. Olson*, 175 N.W. 512, 516 (Iowa 1919); *Gish*, 113 N.W. 757. Drainage districts have such circumscribed and limited powers that they only may be sued to perform delegated duties through mandamus. *Chicago Cent.*, 816 N.W.2d at 373, 374. In the words of Iowa's Supreme Court, drainage districts are "merely an area of land." *Fisher*, 369 N.W.2d at 430. DMWW not only did not seek mandamus, but also seeks damages. *See generally* Complaint, Counts III-X. DMWW does not dispute that Iowa law establishes drainage districts are not subject to damages. Complaint at ¶ 31. Instead, DMWW claims a drainage district's lack of existence for liability purposes somehow deprives DMWW of due process or the equal protection of law under the United States Constitution, the Iowa Constitution or both. *Id.* Well established law shows DMWW's position is mistaken.

II. DMWW's Equal Protection And Due Process Claims Fail.

DMWW's position that Iowa law violates the constitution fails for multiple reasons. First, one political subdivision of a state cannot, as a matter of law, deprive another political subdivision of due process or equal protection rights. Both drainage districts and DMWW are political subdivisions of the State of Iowa. *Koethe v. Johnson*, 328 N.W.2d 293, 298 (Iowa 1982) ("Water Works is an entity created under state law (Iowa Code ch. 388) and therefore a governmental subdivision within the meaning of section 642.2."); *State ex rel. Iowa Employment Sec. Comm'n v. Des Moines Cnty.*, 149 N.W.2d 288, 291 (Iowa 1967) ("We conclude drainage

districts come within the classification of a political subdivision or instrumentality of the state, or one of its political subdivisions or instrumentalities."). "The Fourteenth Amendment simply does not prescribe guidelines and impose restrictions upon one political subdivision vis-à-vis another political subdivision. The relationship between [political subdivisions] is a matter of state concern; the Fourteenth Amendment protections and limitations do not apply." *S. Macomb Disposal Auth. v. Washington Twp.*, 790 F.2d 500, 505 (6th Cir. 1986). As the United States Supreme Court explained:

> The number, nature and duration of the powers conferred upon these [political subdivisions] and the territory over which they shall be exercised rests in the absolute discretion of the state. Neither their charters, nor any law conferring governmental powers or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the state, within the meaning of the federal Constitution. The state, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the state is supreme and its legislative body, conforming its action to the state Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. *** The power is in the state and those who legislate for the state are alone responsible for any unjust or oppressive exercise of it.

*City of Trenton v. State of New Jersey*, 262 U.S. 182, 186-87 (1923) (quoting *Hunter v. Pittsburgh*, 207 U.S. 161, 178-79 (1907)). Iowa's Constitution expressly recognizes drainage districts and their value. Article I, Section 18.

Iowa's Supreme Court used more colorful terms to describe the principle when it stated, "a quasi municipal corporation may not challenge the authority of its creator." *Bd. of Trustees of Monona-Harrison Drainage Dist. No. 1 v. Bd. of Supervisors of Monona Cty.*, 5 N.W.2d 189, 191 (Iowa 1942). As the Court explained:

> Appellee is a legislative creation which has no rights or powers other than those found in the statutes which gave and sustain its life. We quote with approval from a New York decision in *City of Des Moines v. Iowa Tel. Co.*, 181 Iowa 1282, 162 N.W. 323, 326, this: "The true view is this: Municipal corporations owe their origin to, and derive their powers and rights wholly from, the Legislature. It breathes into them the breath of life, without which they cannot exist. As it creates, so may it destroy. If it may destroy, it may abridge and control. Unless there is some constitutional limitation on the right, the Legislature might, by a single act, if we can suppose it capable of so great a folly and so great a wrong, sweep from existence all of the municipal corporations in the state, and the corporation could not prevent it. We know of no limitation on this right so far as the corporations themselves are concerned. They are, so to phrase it, the mere tenants at will of the Legislature."

*Id.* The point is relatively simple. Because the Legislature could eliminate water works, just as it created them, DMWW is in no position to complain that creating drainage districts, in the manner the Legislature did, somehow deprived DMWW of any right. An entity the state could eliminate cannot complain the state's conduct deprived it of a right. As a political subdivision of the State of Iowa, DMWW may not bring due process and equal protections claims against other political subdivisions of the state, including drainage districts. Thus, summary judgment is warranted on DMWW's due process and equal protection claims.

Beyond DMWW being a state created entity that cannot complain its constitutional rights were violated by another state created entity, the Iowa Supreme Court also rejected a similar equal protection argument even as to individuals in *Gard v. Little Sioux Intercounty Drainage Dist. of Monona & Harrison Counties*, 521 N.W.2d 696 (Iowa 1994). In *Gard*, the plaintiff argued, if a drainage district was not subject to suit in tort for money damages, Iowa would have two separate classes of plaintiffs: (1) those injured by drainage districts who could not be sued for tort damages and (2) those injured by municipalities who could be sued. *Id.* at 698-99. The plaintiff argued there was no rational basis for such a distinction. *Id.* Rejecting the argument, the Iowa Supreme Court explained:

> We believe there is a legitimate governmental purpose in permitting tort claims against municipalities under the provisions of chapter 613A but not permitting tort claims against a drainage district. Although municipalities are generally considered legal entities, in Iowa a drainage district is not "such a legal entity as is known to or recognized by law as a proper party to adversary proceedings." *Gish v. Castner-Williams & Askland Drainage Dist.*, 136 Iowa 155, 157, 113 N.W. 757, 757 (1907). Suits have been allowed against a drainage district "only to compel, complete, or correct the performance of a duty or the exercise of a power by those acting on behalf of a drainage district." *Fisher*, 369 N.W.2d at 429. Because of the limited nature of a drainage district's purposes and power, there is a rational basis for the classification.

*Id.* Drainage districts, with their limited existence, are not proper parties to this suit.

III.  **DMWW Lacks Standing To Bring Its Taking Claim.**

Although it provides little explanation, DMWW also claims drainage districts' alleged discharge of nitrate into the Raccoon River watershed is a regulatory and physical taking within the meaning of the Fifth Amendment to the United States Constitution as made applicable to the states by the Fourteenth Amendment to the United States Constitution and Article I, § 18 of the Iowa's Constitution for which it is entitled to just compensation. As noted above, DMWW and drainage districts are political subdivisions of the State of Iowa. *Koethe*, 328 N.W.2d at 298; *State ex rel. Iowa Employment Sec. Comm'n*, 149 N.W.2d at 291. Similar to equal protection and due process claims, political subdivisions may not bring takings claims against another political subdivision in its state—because, again, they could be regulated out of existence. *See, e.g. State ex rel. Grandview Heights City Sch. Dist. Bd. of Ed. v. Morton*, 339 N.E.2d 663, 665 (Ohio 1975); *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 644-46 (Tex. 2004) (holding that municipality could not bring takings claim against state); *City of Clinton v. Cedar Rapids & M.R.R. Co.*, 24 Iowa 455, 476 (1868) ("But it is a mistake to suppose that, where the fee of the streets is in the city, in trust for the public, the city is constitutionally and necessarily entitled to compensation the same as a private proprietor holding the fee. The legislature might provide for such compensation, but is not bound to do so."), *disapproved of on other grounds by*

*Berent v. City of Iowa City*, 738 N.W.2d 193 (Iowa 2007). As a political subdivision of the State of Iowa, DMWW may not bring a takings claim against another political subdivision. Accordingly, summary judgment on DMWW's taking claim is warranted.

IV.   Even If DMWW Had Standing, It Cannot Meet Its Burden On Its Taking Claim.

Even ignoring the foregoing, DMWW still cannot show any taking. Both the Fifth Amendment and Article I, § 18 of Iowa Constitution preclude taking "***private property***" for public use without just compensation. U.S. Const. amend. V (". . . nor shall private property be taken for public use, without just compensation."); Iowa Const. art. I, § 18 ("Private property shall not be taken for public use without just compensation first being made . . . ."). The property at issue is water in the Raccoon River. The Raccoon River is a public waterway, not private property. *See Delaware County Safe Drinking Water Coalition, Inc. v. McGinty*, 2008 WL 2229269, at *1 n.1 (E.D. Penn. May 27, 2008) ("This case involves public water supplies, not private property. There can be no taking of a public resource[.]") A permit to withdraw water for beneficial use "does not constitute ownership or absolute rights of use of the waters." Iowa Code §455B.273 (2015). Because DMWW can identify no private property taken for public use, Defendants are entitled to summary judgment for this reason as well.

### Conclusion

Because DMWW's common law claims against Defendants fail as a matter of law, summary judgment is required.

Respectfully submitted,

BELIN McCORMICK, P.C.

By /s/ *Charles F. Becker*     *Lead Counsel*
   Michael R. Reck
   Stephen H. Locher

666 Walnut Street, Suite 2000
Des Moines, IA 50309-3989
Telephone: (515) 283-4645
Facsimile: (515) 558-0645
E-mail: cfbecker@belinmccormick.com
          mrreck@belinmccormick.com
          shlocher@belinmccormick.com
and

David Y. Chung
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 624-2587
Facsimile: (202) 628-5116
E-mail: dchung@crowell.com
ATTORNEYS FOR DEFENDANTS

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon the parties to this action by serving a copy upon each party listed below on **Sept. 24**, 2015, by

☑ Electronic Filing System    ☐ Other _____

Richard A. Malm
John E. Lande
Dickinson, Mackaman, Tyler & Hagen, P.C.
699 Walnut Street, Suite 1600
Des Moines, IA 50309-3986

*Attorneys for Plaintiffs*

Signature: /s/ *Jryne A. Podlicha*

BELIN\B1496\0001\pld MSJ Brief (02128193-3).DOC