IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| BOARD OF WATER WORKS TRUSTEES OF THE CITY OF DES MOINES, IOWA, <br><br>  Plaintiff <br><br> vs. <br><br> SAC COUNTY BOARD OF SUPERVISORS AS TRUSTEES OF DRAINAGE DISTRICTS 32, 42, 65, 79, 81, 83, 86, and CALHOUN COUNTY BOARD OF SUPERVISORS and SAC COUNTY BOARD OF SUPERVISORS AS JOINT TRUSTEES OF DRAINAGE DISTRICTS 2 AND 51 and BUENA VISTA COUNTY BOARD OF SUPERVISORS and SAC COUNTY BOARD OF SUPERVISORS AS JOINT TRUSTEES OF DRAINAGE DISTRICTS 19 and 26 and DRAINAGE DISTRICTS 64 and 105. <br><br> Defendants. | NO.: 5:15-cv-04020 <br><br> **PLAINITFF'S BRIEF IN SUPPORT OF RESISTANCE TO MOTION TO STAY PENDING CERTIFICATION OF QUESTIONS TO THE IOWA SUPREME COURT** |

Board of Water Works Trustees of the City of Des Moines, Iowa ("DMWW"), states the following in support of its Resistance to Defendants' Motion to Stay Pending Certification of Questions to Iowa Supreme Court:

On January 11, 2016, the Court certified questions related to Defendants' motion for partial summary judgment to the Iowa Supreme Court. (Dkt. 50). The Court has previously noted that certification to the Iowa Supreme Court can delay a case for approximately one year. Hagen v. Siouxland Obstetrics & Gynecology, P.C., 964 F. Supp. 2d 951, 977 (N.D. Iowa 2013). The

exact time required to obtain an opinion on the certified questions here cannot be reliably predicted, but it seems unlikely to occur in time to permit trial to proceed as scheduled on the Tort and Constitutional Claims. DMWW therefore agrees with Defendants that a partial stay of the proceedings is appropriate for Counts III through X of the Complaint ("Tort and Constitutional Claims"). However, DMWW urges the Court not to stay the trial of Counts I and II ("Permit Claims").

I. **A PARTIAL STAY OF ONLY COUNTS III THROUGH X PREVENTS PREJUDICE TO DEFENDANTS**

The Court can accommodate many of the parties' concerns by staying only the Tort and Constitutional Claims while the Iowa Supreme Court responds to the certified questions. Federal Rule of Civil Procedure 42(b) permits the Court to:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

"In exercising discretion [to bifurcate], district courts should consider the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion." O'Dell v. Hercules, Inc., 904 F.2d 1194, 1202 (8th Cir. 1990). The Eighth Circuit has recognized that where "the issues in a case are clearly separable, bifurcation is not an abuse of discretion." Id. However, as this Court has previously noted, "the key issue is whether bifurcation is necessary to avoid prejudice." Shannon v. Koehler, 673 F.Supp.2d 758, 770 (N.D. Iowa 2009) (citing Athey v. Farmers Ins. Exchange, 234 F.3d 357, 362 (8th Cir. 2000)).

A stay of only the Tort and Constitutional claims addresses the prejudice that Defendants identify in their brief. (Dkt. 51-1 at 2-4). The partial stay will not require Defendants to take

discovery on claims that may be dismissed, and will not require Defendants to pursue parallel motion practice.

However, staying the Permit Claims will prejudice DMWW. DMWW is currently confronting unprecedented nitrate conditions in its source waters. These conditions have reached record levels and are expected to continue to challenge DMWW's infrastructure and personnel. Delay of the Permit Claims will delay efforts to address the polluted source water conditions and thus prejudice DMWW. For example, Ted Corrigan, a professional engineer and DMWW's Chief Operating Officer who has been with the utility for more than 25 years is expected to testify that

> DMWW's complex nitrate management process requires significant resources and only barely keeps DMWW in compliance with drinking water standards. There are no signs that the nitrate problem in DMWW's source waters is improving, and the nitrate problem is beginning to manifest collateral damage never imagined when Mr. Corrigan began his career.

(Ex. 1 at 6). Mike McCurnin, another professional engineer with over 23 years of experience at DMWW and who is DMWW's Director of Water Production, is expected to testify that high nitrate concentrations in DMWW source waters present severe operational challenges to DMWW. (Ex. 1 at 9). Furthermore, Mr. McCurnin will likely testify that in 2013, 2014, and 2015 DMWW resources were strained to a near breaking point as DMWW tried to remain compliant with the Safe Drinking Water Act nitrate standard. (Ex. 1 at 9-11). Mr. Corrigan and Mr. McCurnin are two of DMWW's most experienced and knowledgeable facility directors. See (Ex. 1). Both Mr. Corrigan and McCurnin are unequivocal in their assessment that the nitrate problem for DMWW has reached crisis levels:

> [ ] DMWW's efforts to comply with the SDWA [Safe Drinking Water Act] have been sufficient only by the narrowest of margins. DMWW currently adjusts its operations on a day by day, and sometimes *hour by hour*, basis during high nitrate events. Based on Mr. Corrigan's experience and training as a Grade 4 Water

3

>Treatment and Distribution Operator and membership in AWWA [American Water Works Association], DMWW's hourly planning is uncommon and unsustainable for any medium to long term.

(Ex. 1 at 7) (emphasis added). Delaying trial of the Permit Claims will mean further delay of any resolution that might have an impact on DMWW's source waters.

## II. BIFURCATION IS A BETTER ALTERNATIVE TO A TOTAL STAY

### A. The Permit Claims Present Discrete Factual and Legal Issues

The Permit Claims are separable and discrete from the Tort and Constitutional Claims. The Permit Claims will turn on the question of whether the Defendants are "point sources" within the meaning of the Clean Water Act ("CWA") and Iowa Code Chapter 455B. The CWA defines a "point source" to be

> [A]ny discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged. This term does not include agricultural stormwater discharges and return flows from irrigated agriculture.

33 U.S.C. § 1362(14); see also, Iowa Code § 455B.171(19). The question of whether the Defendants are point sources is separable from the question of whether Defendants are causing a nuisance, trespassing, acting negligently, or violating DMWW's constitutional rights. The factual inquiry on the Permit Claims focuses almost exclusively on the mechanics of drainage and the chemical composition of the discharge from Defendants' drainage infrastructure. This inquiry has little impact on, for example, a nuisance claim in which the Court will evaluate the harm of nitrate pollution to DMWW and the Defendant's contribution to this harm, or the legal inquiry for the constitutional claims in the evaluation of the rights of DMWW and Defendant's asserted immunity from damages.

Even if evidence relevant to the Permit Claims overlaps with evidence relevant to the

4

Tort and Constitutional Claims portions of the record from the first trial could be recalled in a second trial. All counsel of record filed affidavits stating their agreement to try to implement principles from *Trial By Agreement: How Trial Lawyers Hold the Key to Improving Jury Trials in Civil Cases*, 32 REV. LITIG. 431 (2013). (Dkt. 20-29). The parties could come up with a sensible plan to introduce relevant material from the first trial at the second trial. Furthermore, neither party requested a jury. There is little concern of confusing the fact finder—the Court—with a trial on the Permit Claims and a second trial on the Tort and Constitutional Claims.

Defendants' assertion that bifurcation will lead to two 10-day trials, (Dkt. 51-1 at 6), is an overstatement of the time necessary to conduct the first trial. In addition, the second trial can include portions of a first trial's record. While a few witnesses may need to be recalled in a second trial, others may not be called at all due to the nature of their testimony. Likewise, some witnesses may only be relevant in the first trial on the Permit Claims. A first trial on only the Permit Claims will also be shorter than a single trial on all of the claims.

DMWW also expects there may be motion practice on the Permit Claims at some point, since no court has addressed the applicability of NPDES permit requirements to the agricultural drainage infrastructure at issue here. There is therefore the possibility that no trial will be necessary on the Permit Claims. There is no reason to delay resolution of such a motion on the Permit Claims while waiting for a response from the Iowa Supreme Court. Bifurcation will permit this aspect of the case to develop rather than be held in abeyance.

Finally, DMWW shares Defendants desire to avoid "the time, distraction, and expense of trying this complex and challenging case twice." (Dkt. 51-1 at 5). However, the burden on DMWW is equal to that of Defendants in terms of resources and "distraction." The surest way to resolve the drain on resources is to continue to move this case toward resolution to the fullest

5

extent that is practical.

### B. Whether Defendants May Appeal Does Not Support a Total Stay

When the parties are permitted to take an appeal should not affect the decision of whether to grant a total stay. DMWW agrees with Defendants' assertion that a partial stay may mean that Defendants may not be able to appeal immediately after a first trial. See (Dkt. 51-1 at 5-6). But this is not unique to the Defendants in that the same would be true if DMWW were to appeal. Also it is unclear what prejudice Defendants might suffer if they were not permitted to take an immediate appeal from a decision after the August 8 trial, in that the timing for the appeal with two trials would be identical to the timing for an appeal with one later trial. Furthermore, as Defendants note, the Court could permit an immediate appeal for either party. See 28 U.S.C. § 1292(b); Fed. R. Civ. P. 54(b).

**Wherefore**, DMWW respectfully requests the Court deny in part Defendants' Motion to Stay Pending Certification of Questions to the Iowa Supreme Court. DMWW suggests the following procedure be implemented to bifurcate these proceedings:

A. The Court bifurcate for purposes of trial the Permit Claims (Counts I and II) from the Tort and Constitutional Claims (Counts III-X).

B. Counts I and II will be heard by the Court beginning on August 8, 2016;

C. All discovery and deadlines on Counts III through X will be stayed until the Iowa Supreme Court responds to the Court's certified questions. On the date that the Iowa Supreme Court issues its opinion responding to the Court's certified questions all stayed deadlines and discovery will resume with the same amount of time left on deadlines as there was on the date of the Court's bifurcation order, with such adjustments as may be reasonable in view of the circumstances then pertaining;

D. The parties hold a trial scheduling and case management conference to set a trial, if necessary, on Counts III through X as soon as practicable after the Iowa Supreme Court responds to the Court's certified questions.

> By: /s/ John E. Lande
> Richard A. Malm, AT004930
> John E. Lande, AT0010976
> Colleen MacRae, AT0011436
> OF
> DICKINSON, MACKAMAN, TYLER & HAGEN, P.C.
> 699 Walnut Street, Suite 1600
> Des Moines, Iowa 50309-3986
> Telephone: (515) 244-2600
> FAX: (515) 246-4550
> rmalm@dickinsonlaw.com
> jlande@dickinsonlaw.com
> cmacrae@dickinsonlaw.com
>
> ATTORNEYS FOR PLAINTIFF, BOARD OF WATER WORKS TRUSTEES OF THE CITY OF DES MOINES, IOWA

**CERTIFICATE OF SERVICE**

       I hereby certify that on January 15, 2016, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following

Charles F. Becker
Michael R. Reck
Stephen H. Locher
Belin McCormick, P.C.
666 Walnut Street, Suite 2000
Des Moines, Iowa 50309-3989
Direct Dial: (515) 283-4609
cfbecker@belinmccormick.com
mrreck@belinmccormick.com
shlocher@belinmccormick.com

David Yolun Chung
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Phone: (202) 624-2587
Fax: (202) 628-5116
dchung@crowell.com

                                      /s/ John E. Lande
                                      John E. Lande

8

Case 5:15-cv-04020-MWB   Document 53-1   Filed 01/15/16   Page 8 of 8