# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| BOARD OF WATER WORKS TRUSTEES OF THE CITY OF DES MOINES, IOWA,<br><br>    Plaintiff,<br><br>vs.<br><br>SAC COUNTY BOARD OF SUPERVISORS AS TRUSTEES OF DRAINAGE DISTRICTS 32, 42, 65, 79, 81, 83, 86, et al.,<br><br>    Defendants. | No. C15-4020-LTS<br><br>**MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |

## I.   INTRODUCTION

This case is before me on motions (Doc. Nos. 34, 60) for summary judgment filed by all defendants. The Iowa Supreme Court has answered this court's certified questions concerning Iowa law[1] and the parties have filed a joint status report (Doc. No. 81). The motions are fully submitted and ready for decision. For the reasons set forth herein, the defendants' motions will be granted and this case will be dismissed in its entirety.

## II.   PROCEDURAL HISTORY

Plaintiff Board of Water Works Trustees of the City of Des Moines, Iowa, also known as the Des Moines Water Works (DMWW), commenced this action on March 16,

---

[1] *See Board of Water Works Trustees of the City of Des Moines, Iowa v. Sac Cty. Bd. of Supervisors, as Trustee of Drainage Dist. 32, 42, 65, 79, 81, 83, 86, et al.*, No. 16-0076, 890 N.W.2d 50 (Iowa 2017) (hereafter the Certified Questions Opinion) (filed herein as Doc. No. 82).

2015, by filing a ten-count complaint (Doc. No. 2). The named defendants are the Sac County Board of Supervisors, as Trustees of Drainage Districts 32, 42, 65, 79, 81, 83, 86, the Calhoun County Board of Supervisors and the Sac County Board of Supervisors, as Joint Trustees of Drainage Districts 2 and 51, and the Buena Vista County Board of Supervisors and the Sac County Board of Supervisors, as Joint Trustees of Drainage Districts 19 and 26 and Drainage Districts 64 and 105 (collectively the defendants or the drainage districts). The complaint includes the following causes of action:

| **Count** | **Title** |
|---|---|
| I | Clean Water Act [33 U.S.C. § 1365] |
| II | [Iowa Code] Chapter 455B |
| III | Public Nuisance |
| IV | Statutory Nuisance |
| V | Private Nuisance |
| VI | Trespass |
| VII | Negligence |
| VIII | Taking Without Just Compensation |
| IX | Due Process & Equal Protection |
| X | Injunctive Relief |

Doc. No. 2. United States District Judge Mark W. Bennett, to whom this case was initially assigned,[2] has aptly summarized this case as follows:

> The state of Iowa's largest municipal water utility provider, providing drinking water to an estimated half million customers in the Des Moines area, alleges state tort claims and federal and state statutory and constitutional claims against ten upstream drainage districts and three upstream County Board of Supervisors as Trustees of the Drainage Districts. This is a case about which political subdivision of Iowa must cover the costs of complying with federal and state clean water regulations due to increased nitrate levels, beyond the maximum allowed by law, in the

---

[2] This case was reassigned to me on February 17, 2016, upon my appointment as a United States District Judge.

water flowing downstream that is used by the State's largest municipal water utility.

Doc. No. 50 at 4 [footnote omitted].

On September 24, 2015, defendants filed a motion (Doc. No. 34) for summary judgment on Counts III through X. DMWW filed a resistance (Doc. No. 35) and defendants filed a reply (Doc. No. 42). Judge Bennett conducted a hearing on the motion on December 21, 2015. Before the hearing, Judge Bennett issued an order directing the parties to confer and "to determine all issues that may be appropriate for certification to the Iowa Supreme Court pursuant to Iowa Code § 684A.1 (2015)." Doc. No. 46 at 1. After the hearing, Judge Bennett certified four questions to the Iowa Supreme Court. Doc. No. 50.

While those certified questions of Iowa law were pending before the Iowa Supreme Court, defendants filed a motion (Doc. No. 60) for summary judgment as to Counts I and II. DMWW filed a resistance (Doc. No. 67) and defendants filed a reply (Doc. No. 78). On January 27, 2017, the Iowa Supreme Court filed the Certified Questions Opinion. The Court answered the certified questions as follows:

> **Question 1:** As a matter of Iowa law, does the doctrine of implied immunity of drainage districts as applied in cases such as *Fisher v. Dallas County*, 369 N.W.2d 426 (Iowa 1985), grant drainage districts unqualified immunity from all of the damage claims set forth in the complaint (docket no. 2)?
>
> **Answer:** Yes. As explained below, drainage districts have a limited, targeted role—to facilitate the drainage of farmland in order to make it more productive. Accordingly, Iowa law has immunized drainage districts from damages claims for over a century. This immunity was reaffirmed unanimously by our court just over four years ago.
>
> **Question 2:** As a matter of Iowa law, does the doctrine of implied immunity grant drainage districts unqualified immunity from equitable remedies and claims other than mandamus?

3

**Answer:** Yes. Again, Iowa precedent, reaffirmed unanimously by our court just four years ago, recognizes that drainage districts are immune from injunctive relief claims other than mandamus.

**Question 3:** As a matter of Iowa law, can the plaintiff assert protections afforded by the Iowa Constitution's inalienable rights, due process, equal protection, and takings clauses against drainage districts as alleged in the complaint?

**Answer:** No. Although these constitutional clauses are fundamental to our freedom in Iowa, they exist to protect citizens against overreaching government. Generally, one subdivision of state government cannot sue another subdivision of state government under these clauses. And even if they could, an increased need to treat nitrates drawn from river water to meet standards for kitchen tap water would not amount to a constitutional violation.

**Question 4:** As a matter of Iowa law, does the plaintiff have a property interest that may be the subject of a claim under the Iowa Constitution's takings clause as alleged in the complaint?

**Answer:** No, for the reasons discussed in the answer to Question 3.

Doc. No. 82 at 3-4. At my request, the parties then filed a joint status report (Doc. No. 81) setting forth their positions as to how this case should proceed in light of the Certified Questions Opinion.

### III. RELEVANT FACTS

DMWW is a municipal water utility organized under Iowa Code Chapter 388 that provides drinking water to customers in the Des Moines area. DMWW obtains its water supply from the Raccoon and Des Moines Rivers. Defendants are various drainage districts organized under Iowa Code Chapter 468 located in upstream areas that drain into those rivers. As Judge Bennett noted in his certification order:

> Drainage districts are a funding mechanism property owners establish to levy for drainage improvements. *Fisher v. Dallas Cty.*, 369 N.W.2d 426, 428-29 (Iowa 1985). For a drainage district to be established, at least two land owners must petition for its creation. IOWA CODE § 468.6. "The right of a landowner to place tiles in swales or ditches to carry the water from ponds upon and onto lower lands . . . is necessary [ ] in order that low and swampy lands may be reclaimed, and a denial thereof would be productive of incalculable mischief." *Dorr v. Simmerson*, 103 N.W. 806, 807 (1905). The affairs of drainage districts are managed by the county board of supervisors in a representative capacity. *See* IOWA CODE §§ 468.37, .89, .231, .232, .617. If a repair exceeds $50,000, a hearing is required to determine advisability and appeal is allowed. IOWA CODE § 468.126(1)(c). Similarly, improvements exceeding a certain amount can be stopped through a process called remonstrance. IOWA CODE § 468.126(4)(e).

Doc. No. 50 at 7-8. Both DMWW and the drainage districts are political subdivisions of Iowa. *See Koethe v. Johnson*, 328 N.W.2d 293, 298 (Iowa 1982); *State ex rel. Iowa Emp't Sec. Comm'n v. Des Moines Cty.*, 149 N.W.2d 288, 291 (Iowa 1967).

Under the Safe Drinking Water Act, 42 U.S.C. § 3000 et seq., DMWW is obligated to meet maximum contaminant level (MCL) standards established by the Environmental Protection Agency (EPA) in its finished water. Among the contaminants regulated are nitrates. To meet the EPA's standards, DMWW must remove nitrates from its water supply. DMWW alleges that there has been an increased level of nitrates in the water supply caused by the drainage districts channeling of nitrate-contaminated ground water into the water supply.

As a result of this increase, DMWW alleges that despite investments in infrastructure and the development of strategies to manage periodic high nitrate levels, there is a continued threat to the water supply caused by the actions of the drainage districts. DMWW alleges that the only way to adequately protect citizens at a reasonable cost is to prevent the discharge of nitrates from the drainage districts' infrastructure. DMWW requests entry of an order compelling the drainage districts to obtain national

pollutant discharge elimination system (NPDES) permits and to comply with the Clean Water Act (CWA) in limiting nitrate discharges. DMWW further seeks a declaratory judgment that the drainage districts have violated both the CWA and Iowa Code Chapter 455B by failing to comply with effluent limitations prescribed by the NPDES permit system. In addition, DMWW alleges that the drainage districts' actions violate the Takings Clause, the Due Process and the Equal Protection Clause of the United States Constitution.

## IV. *SUMMARY JUDGMENT STANDARDS*

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id*. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*.

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party on the question,'" *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts,"

*Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods,* 415 F.3d 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

7

## V. DISCUSSION

### A. Counts I and II

As noted above, the defendants' original motion for summary judgment (Doc. No. 34) addressed Counts III through X. Only after Judge Bennett filed the certification order did the defendants file a motion for summary judgment as to Counts I and II. Not surprisingly, in their joint status report the parties disagree as to whether the Iowa Supreme Court's ruling impacts Counts I and II. For example, DMWW notes that Count I is based on federal law and suggests, therefore, that the Iowa Supreme Court's responses to questions of Iowa law have no impact on that claim. Defendants argue, however, that the Court's description and reaffirmation of the drainage districts' limited powers supports their claim that the doctrine of redressability requires dismissal of Counts I and II.

#### 1. Applicable Standards

The federal district courts are courts of limited jurisdiction. U.S. Const., art. III, § 1. They "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Marine Equip. Mgmt. Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993). A plaintiff's standing to sue is a threshold question in every federal case. *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000). "To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

The last element, redressability, requires a showing that it is "'likely' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560. "The redressability prong is not met when a plaintiff seeks

relief against a defendant with no power to enforce a challenged statute." *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015) (quoting *Bronson v. Swensen*, 500 F.3d 1099, 1111 (10th Cir. 2007)). Thus, "[i]f the defendants have no power to redress the alleged injuries even if the court were to grant the requested relief, the plaintiff has no case or controversy against those particular defendants." *Scott v. DiGuglielmo*, 615 F. Supp. 2d 368, 373 (E.D. Pa. 2009) (citing *Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001)).

### 2. The Clean Water Act

In 1972, Congress amended the Federal Water Pollution Control Act of 1948. 33 U.S.C. §§ 1251 *et seq*. This amendment became known as the Clean Water Act (CWA). The CWA was designed to eliminate "the discharge of pollutants into navigable waters." 33 U.S.C. § 1251. One way in which the CWA accomplishes this goal is through a structure for regulating pollutant discharges. The CWA contains a provision to establish the national pollutant discharge elimination system (NPDES) for the discharge of pollution. 33 U.S.C. § 1342. "[T]he NPDES requires dischargers to obtain permits that place limits on the type and quantity of pollutants that can be released into the Nation's waters." *S. Florida Water Mgmt. Dist. v. Miccosukee Tribe of Indians*, 541 U.S. 95, 102 (2004). "The Act defines the phrase 'discharge of a pollutant' to mean 'any addition of any pollutant to navigable waters from any point source.'" *Id.* (quoting 33 U.S.C. § 1362(12)). Under the NPDES, the term "point source" means "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). Point sources do "not

9

include agricultural stormwater discharges and return flows from irrigated agriculture." *Id*.

Here, the parties disagree as to whether the drainage districts qualify as "point sources" under the NPDES and, thus, whether they require permitting as provided by the CWA. Further, even if drainage districts are point sources requiring permits under the NPDES, the parties disagree as to whether DMWW's alleged injury problem can be redressed by a favorable ruling.

### *3. Redressability*

Defendants contend that the Certified Questions Opinion precludes the possibility of redress. In other words, they argue that under Iowa law, drainage districts have no power to redress DMWW's alleged injuries, even if DMWW prevails on Count I and/or Count II. I agree.

The Iowa Supreme Court made it clear that drainage districts have only those rights and powers set forth in the statutes that created them. Doc. No. 82 at 27 ("[A] drainage district is a legislative creation which has no rights or powers other than those found in statutes which give and sustain its life." (quoting *State ex rel. Iowa Emp't Sec. Comm'n v. Des Moines County*, 149 N.W.2d 288, 291 (Iowa 1967))). Under Iowa Code Chapter 468, drainage districts are empowered to:

> restore or maintain a drainage or levee improvement in its original efficiency or capacity, and for that purpose may remove silt, debris, repair any damaged structures, remove weeds and other vegetable growth, and whatever else may be needed to restore or maintain such efficiency or capacity to prolong its useful life.

Iowa Code § 468.126(1)(a). The Iowa Supreme Court noted that "[a]n improvement is further defined as 'a project intended to expand, enlarge, or otherwise increase the capacity of any existing ditch, drain, or other facility above that for which it was

10

designed.'" Doc. No. 82 at 27-28 (quoting Iowa Code § 468.126(4)). The Court thus held that "under the express language of the statute, the drainage district is empowered only to 'restore,' 'maintain,' or 'increase' the flow of water through the drainage system." *Id.* (quoting Iowa Code § 468.126(1),(4)).

The Court made numerous references to the drainage districts' limited powers and duties, making it very clear that defendants lack the ability to redress DMWW's alleged injuries. For example:

> Drainage district immunity is premised on their limited purpose, which is "to build and maintain drainage improvements that provide for the 'drainage and improvement of agricultural and other lands, thereby making them tillable or suitable for profitable use.'" *Hardin Cty. Drainage Dist. 55, Div. 3, Lateral 10 v. Union Pac. R.R.*, 826 N.W.2d 507, 510 (Iowa 2013) (quoting *Chi., Milwaukee & St. Paul Ry. v. Mosquito Drainage Dist.*, 190 Iowa 162, 163, 180 N.W. 170, 170 (1920)). Drainage districts have no other function, power, or purpose.

*Id.* at 13-14.

> Chapter 468 imposes no duty on the districts to filter out nitrates. Rather, chapter 468 simply requires drainage districts to maintain drainage systems to keep the water flowing to drain lands. *See, e.g.*, Iowa Code § 468.126(1)(a)(requiring repairs as necessary to "restore or maintain a drainage … improvement in its original efficiency or capacity"). No provision in chapter 468 authorizes drainage districts to mandate changes in farming practices to reduce fertilizer runoff or to assess farmers for the costs of removing nitrates from waters flowing through agricultural drainage systems.

*Id.* at 23.

> The defendants' lack of statutory authority to regulate farmer nitrate use cuts against revisiting our longstanding precedent, which rests upon the limited existence and powers of drainage districts. "Liability follows control …." *Estate of McFarlin v. State*, 881 N.W.2d 51, 64 (Iowa 2016). A party in control of an activity can take precautions to reduce the risk of harm to others. *See McCormick v. Nikkel & Assocs., Inc.*, 819 N.W.2d 368, 374 (Iowa 2012) ("The reason is simple: The party in control of the

11

> work site is best positioned to take precautions to identify risks and take measures to improve safety."); *Allison by Fox v. Page*, 545 N.W.2d 281, 283 (Iowa 1996) ("The general rule and exceptions reveal a common principle: liability is premised upon control."); *Schlotfelt v. Vinton Farmers' Supply Co.*, 252 Iowa 1102, 1113, 109 N.W.2d 695, 701 (1961) (declining to issue injunction in nuisance action for foot traffic entering plaintiff's business because "defendant … should not be compelled to control its customers and in any event could not do so"); *see also Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001) (reversing injunction against government officials who "have no power to redress the asserted injuries"); *McDaniel v. Bd. of Educ.*, 956 F. Supp. 2d 887, 894 (N.D. Ill. 2013) (rejecting equitable claims against parties who would "lack the power to carry out the injunction"); *State v. Lead Indus. Ass'n*, 951 A.2d 428, 449–50 (R.I. 2008) (holding public nuisance claim for contamination required proof defendants were in control over the instrumentality causing the alleged nuisance at the time the damage occurred). These basic principles of tort law favor preserving, not abrogating, the immunity for drainage districts.

*Id*. at 23-24.

> Nothing in the home rule amendment broadens the supervisors' operational authority over drainage districts or gives drainage districts the power to regulate farming practices or water quality.

*Id*. at 32.

The drainage districts are creations of Iowa law. In light of the Iowa Supreme Court's unambiguous description of the limited duties and powers of those districts, I conclude that Counts I and II fail for lack of Article III standing under the doctrine of redressability. Through those counts, DMWW seeks injunctive relief and the assessment of civil penalties against the drainage districts arising from alleged duties and powers that the districts simply do not possess under Iowa law. DMWW may well have

12

suffered an injury, but the drainage districts lack the ability to redress that injury. Defendants' motion for summary judgment as to Counts I and II will be granted.[3]

B.  *Counts III through IX*

The parties agree that the Iowa Supreme Court's decision disposes of the state law claims set forth in Counts III through IX unless the principles of Iowa law described in that ruling violate the United States Constitution. DMWW argues that Iowa's grant of immunity to drainage districts violates the Equal Protection and Due Process Clauses of the Fourteenth Amendment, along with the Takings Clause of the Fifth Amendment.[4]

The first problem with DMWW's argument is that DMWW is not a private entity, but instead "a public utility created by the Iowa legislature." Doc. No. 82 at 40. It is well-settled that "[a] political subdivision of a state cannot invoke the protection of the fourteenth amendment against the state." *Delta Special Sch. Dist. No. 5 v. State Bd. of Educ.*, 745 F.2d 532, 533 (8th Cir. 1984) (citing *City of Trenton v. New Jersey*, 262 U.S. 182 (1923)); *see also Hous. Auth. of Kaw Tribe of Indians of Oklahoma v. City of Ponca City*, 952 F.2d 1183, 1190 (10th Cir. 1991) ("We thus conclude that a political subdivision of a state may not challenge the validity of an act by a fellow political subdivision under the Fourteenth Amendment unless such an action is expressly authorized by the creating state."); *Village of Arlington Heights v. Reg'l Transp. Auth.*, 653 F.2d 1149, 1153 (7th Cir. 1981) ("[T]he principle that a municipality may not challenge acts of the state under the Fourteenth Amendment applies 'whether the

---

[3] Because I find defendants' redressability argument to be dispositive, I will not address their other arguments concerning Counts I and II.

[4] The Takings Clause is applicable to the States through the Fourteenth Amendment. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005).

13

defendant is the state itself or another of the state's political subdivisions.'"); *S. Macomb Disposal Auth. v. Washington Twp.*, 790 F.2d 500, 505 (6th Cir. 1986) (collecting cases).

Here, one political subdivision created by the Iowa legislature has sued other political subdivisions created by the same legislature and contends that the immunity afforded by Iowa law to the defendants violates the plaintiff's rights under the United States Constitution. Such a claim is not cognizable. In addition, as I will explain below, the specific claims at issue have no merit, even if DMWW is otherwise entitled to make them.

### 1. *The Equal Protection Claim*

DMWW argues that Iowa's immunization of the drainage districts from suit violates the Equal Protection Clause of the United States Constitution. DMWW frames the issue as involving a classification scheme under which victims of torts committed by some governmental subdivisions have a remedy, while victims of torts committed by drainage districts do not. Doc. No. 35-2 at 21.

"When an equal protection claim is neither based on a 'suspect class' or grounded in a fundamental right, it is subject to a rational basis review." *Gilmore v. Cty. of Douglas, State of Neb.*, 406 F.3d 935, 937 (8th Cir. 2005) (citing *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 446-47 (1985)). DMWW's claim is not based on a suspect class or grounded in a fundamental right. As such, if the challenged classification is rationally related to a legitimate end, it is constitutional.

The Iowa Supreme Court has considered whether drainage district immunity violates the Iowa Constitution's Equal Protection Clause, concluding that because drainage districts have limited powers and serve a limited purpose, there is a rational basis to allow suits against municipalities but not drainage districts. *Gard v. Little Sioux*

*Intercounty Drainage Dist. of Monona & Harrison Ctys.*, 521 N.W.2d 696, 699 (Iowa 1994). I find the Court's analysis to be equally applicable to the federal Equal Protection Clause. "Equal protection does not guarantee that all persons must be dealt with in an identical manner and does not forbid all statutory classifications." *Walker v. Hartford Life and Accident Ins. Co.*, 831 F.3d 968, 976 (8th Cir. 2016) (internal quotations and citations omitted). Those claiming there is no rational basis for a classification bear the burden of negating every conceivable basis which might support it. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).

DMWW contends that the Iowa Supreme Court's analysis in *Gard* did not fully account for the true nature of drainage districts, arguing that they have much more power than the Court determined. *See* Doc. No. 35-2 at 23. As demonstrated by the Certified Questions Opinion, this is simply not true. Instead, as noted above, the Court has now reiterated the limited statutory powers and purposes of drainage districts.

DMWW also contends that the distinction between drainage districts and other governmental subdivisions creates irrational results. In doing so, DMWW advances a policy argument, not a constitutional one. It states:

> The precise issue is one of simple arithmetic. The Iowa Nutrient Reduction Strategy, in line with national goals, seeks a 45% reduction of nitrate and other nutrient pollution. (Dkt. 2 ¶¶ 39, 40). At the same time it estimates that 8% of nitrate comes from currently regulated sources such as sewer systems and 92% come from unregulated sources, namely agriculture, and primarily drainage. (Dkt. 2 ¶¶ 39, 40). It strains rationality to believe that 8% of the problem can create 45% of the solution.

Doc. No. 35-2 at 23-24. These contentions are best directed to the Iowa legislature. Under rational basis review, the immunity Iowa law affords to drainage districts does not violate the Equal Protection Clause of the United States Constitution.

### 2. *The Due Process Claim*

DMWW argues that drainage district immunity violates its substantive and procedural due process rights by depriving it of an adequate remedy for the drainage districts' alleged pollution of the Raccoon River. "To establish a substantive due process violation, [plaintiff] must demonstrate that a fundamental right was violated and that the conduct shocks the conscience." *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 995 (8th Cir. 2016) (quoting *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009) (in turn citing *Moran v. Clarke*, 296 F.3d 638, 651 (8th Cir. 2002) (Bye, J., concurring))). DMWW seems to admit that there is no fundamental right at issue:

> The interest at stake is reasonably clean water. . . . This is an important interest, but not a fundamental right except to the extent it is protected by Fifth and Fourteenth Amendments and the Iowa Constitution.

Doc. No. 35-2 at 25. DMWW cites no authority supporting a finding that a municipal water utility has a fundamental right to "reasonably clean water." Moreover, given the limited powers and purposes of drainage districts, as they have been created by Iowa law, the fact that those districts are immune from suit falls far short of shocking the conscience.

DMWW notes that if a fundamental right is not at stake, the challenged governmental action is subject to a rational basis test. Doc. No. 35-2 at 24-25. Citing no authority, DMWW argues that Iowa's decision to grant immunity from suit to drainage districts is irrational, and therefore violates DMWW's substantive due process rights. I disagree. As the Iowa Supreme Court noted, "[d]rainage districts lack the broad police powers exercised by counties and other political subdivisions." Doc. No. 82 at 32. In light of the limited powers and purposes of drainage districts under Iowa law, immunizing those districts from suit withstands rational basis review.

Finally, DMWW advances an abbreviated, and seemingly half-hearted, suggestion that Iowa's decision to grant immunity to its drainage districts violates DMWW's procedural due process rights. Doc. No. 35-2 at 26. DMWW asserts that immunizing

drainage districts is based on "a false presumption of promotion of public health." *Id*. Again, this may be a fine public policy argument for consideration by the Iowa legislature, but it falls far short of establishing a violation of DMWW's due process rights under the United States Constitution.

### 3. *The Takings Claim*

The Takings Clause "expressly requires compensation where government takes private property 'for public use.'" *Lingle*, 544 U.S. at 543. DMWW contends that its rights under the Takings Clause have been violated because the drainage districts have deprived DMWW of property rights without just compensation. The Iowa Supreme Court rejected this argument under the Iowa Constitution, stating:

> We also reject the DMWW's "takings" claim. The takings clause provides, "*Private* property shall not be taken for public use without just compensation first being made . . . ." Iowa Const. art. I, § 18 (emphasis added). No private property is involved in this case. To the contrary, we have a dispute among various public subdivisions that only exist by the grace of the Iowa General Assembly.
>
> The drainage districts have not unconstitutionally deprived the DMWW of any property. The Raccoon River is owned by the State of Iowa in trust for the public. *See Estate of McFarlin*, 881 N.W.2d at 63. The DMWW does not own the water flowing in the Raccoon River, nor was it denied access to that water. "This case involves public water supplies, not private property. There can be no taking of a public resource . . . ." *Del. Cty. Safe Drinking Coal., Inc. v. McGinty*, No. 07–1782, 2008 WL 2229269, at *1 n.1 (E.D. Penn. May 27, 2008). In *City of Trenton v. New Jersey*, the United States Supreme Court rejected a takings claim under the Fifth Amendment. 262 U.S. 182, 191–92, 43 S.Ct. 534, 538, 67 L.Ed. 937, 942–43 (1923). The City of Trenton operated a water utility and challenged the state's license fee for diverting river water as an unconstitutional taking. *Id*. at 183, 43 S.Ct. at 535, 67 L.Ed. at 939–40. The Court held that regardless of whether the city's water treatment facility was a proprietary or governmental function, the city could not assert a takings claim against the state. *Id*. at 191–92, 43 S.Ct. at 538, 67 L.Ed.

> at 943; *see also City of Hugo v. Nichols*, 656 F.3d 1251, 1257 (10th Cir. 2011) (applying *City of Trenton* and its progeny to hold municipality could not "sue its parent state under a substantive provision of the Constitution"); *Bd. of Levee Comm'rs of the Orleans Levee Bd. v. Huls*, 852 F.2d 140, 142–43 (5th Cir. 1988) (holding political subdivisions cannot assert just compensation claims against the state). We reach the same conclusion under the Iowa Constitution. If the DMWW, a public entity, cannot assert a takings claim against the state, nor can it assert such a claim against another political subdivision of the state—a drainage district created by state statute.

Doc. No. 82 at 35-36 (footnotes omitted).

I find the same analysis, and answer, to be equally applicable under the federal Takings Clause. Property interests are "'not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Paul v. Davis*, 424 U.S. 693, 709 (1976) (in turn quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972))). In other words: "State law defines property rights for federal takings claims." *Rucci v. City of Eureka*, 231 F. Supp. 2d 954, 957 (E.D. Mo. 2002); *see also Webb's Fabulous Pharms., Inc. v. Beckwith*, 449 U.S. 155, 161 (1980); *Washington Legal Found. v. Texas Equal Access to Justice Found.*, 94 F.3d 996, 1000 (5th Cir. 1996) ("State law defines 'property' and the United States Constitution protects private property from government encroachment."), *aff'd sub nom. Phillips v. Washington Legal Found.*, 524 U.S. 156 (1998).

Here, DMWW asserts that it has two property rights: (1) the right to obtain clean water from the Raccoon River and (2) the right to use its treatment plant and facilities without impairment from pollutants discharged into the Raccoon River. Even if these could be considered cognizable property rights under state law, DMWW holds those rights as a public entity, making them public property rights not protected by the Fifth

Amendment's Takings Clause. Moreover, based on the federal law authorities cited by the Iowa Supreme Court, a public entity such as DMWW cannot assert a Fifth Amendment takings claim against another political subdivision of the state. For these reasons, DMWW has no cognizable claim under the federal Takings Clause.

### 4. *Summary – Counts III through IX*

By virtue of its answers to this court's certified questions, the Iowa Supreme Court established that Counts III through IX have no merit under Iowa law. This leaves for this court's consideration only DMWW's various contentions that Iowa law violates its rights under the United States Constitution. Having found those contentions to be entirely devoid of merit, I will grant the defendants' motion for summary judgment as to all of these counts.[5]

## VI. CONCLUSION

For the reasons set forth herein:

1. Defendants' motion (Doc. No. 34) for summary judgment on Counts III through X of the complaint is **granted in its entirety**.

2. Defendants' motion (Doc. No. 60) for summary judgment on Counts I and II of the complaint is **granted in its entirety**.

3. Because defendants are entitled to judgment on all counts of the complaint, this case is hereby **dismissed**.

4. The Clerk shall enter judgment against the plaintiff and in favor of the defendants and close this case.

---

[5] Count X, which is the final count of the complaint, asserts no substantive rights but, instead, requests permanent injunctive relief. Because the defendants are entitled to judgment as a matter of law on all of the substantive counts, Count X will be dismissed, as well.

**IT IS SO ORDERED.**

**DATED** this 17th day of March, 2017.

_____
LEONARD T. STRAND
CHIEF UNITED STATES DISTRICT JUDGE